## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | Case No. 1:19CR00054 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **PHILLIP A. PETERSON,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Randy Ramseyer, Lena Busscher, and Whitney D. Pierce, Assistant United States Attorneys, Abingdon, Virginia, for United States; Robert M. Galumbeck and Aaron M. Gillespie, Galumbeck & Kegley, Attorneys at Law, Tazewell, Virginia, C. William Davis, Richardson & Davis, PLLC, Bluefield, West Virginia, William L. Mundy, Mundy & Associates, Huntington, West Virginia, and Dennis H. Lee, The Dennis H. Lee Law Firm. PLLC, Tazewell, Virginia, for Defendant.*

The defendant, a family practice physician, is charged with 85 counts of prescribing controlled substances to patients SY, MC, and MS without a legitimate purpose and beyond the bounds of professional practice, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). In advance of trial, the government has filed a Motion in Limine to Exclude Testimony of Defendant's Designated Experts. The motion has been argued and briefed and is ripe for decision.[1]

---

[1] Pretrial rulings on motions in limine are conditional and a motion to reconsider may be made based upon events at trial or other changed circumstances. *United States v. Dalton*, No. 1:17CR00024, 2018 WL 356205, at *1 n.1 (W.D. Va. Jan. 10, 2018). Any objections to specific testimony elicited from witnesses may be raised at trial.

I.

The defendant has designated seven expert witnesses for trial testimony, including himself.   The government moves to exclude certain testimony as a "needless presentation of cumulative evidence and a waste of trial time" and for a lack of reliability, qualifications, or relevance. Mem. Supp. Mot. Lim. 2, ECF No. 42; Tr. 8–10, ECF No. 75.   The witnesses, other than the defendant, are Marc A. Swanson, Carol Warfield, John Spangler, Lauren Caldas, Lee E. Smith, and William Hazel.   The defendant represents in his Expert Witness Disclosure, Response to the United States' Motion, and Supplemental Response to the United States' Motion the expected material witness testimony to be as follows.

All Witnesses.   The defendant expects all designated witnesses to opine that the defendant acted in good faith and that the defendant's conduct at the relevant times was for legitimate medical purposes and in the usual course of professional practice.   The defendant also expects that all will testify about the alleged lack of controlled substance "red flags" in this case.

Marc A. Swanson.   The defendant asserts that Marc A. Swanson, M.D., a board-certified anesthesiologist and pain management specialist, will testify that the defendant's treatment of patients SY and MC was in good faith, for a legitimate purpose, and was within the usual course of professional practice because:

- MC has a pain-producing pathology, and the defendant took adequate steps to treat MC outside of prescribing opioids, including referrals to neurosurgeons, pain management clinics, and for psychiatric evaluations.

- Patient SY needed opioids to function because of the significant pain in which SY suffered.

- As the patients' primary care doctor, the defendant knew each patient's needs more thoroughly than a pain specialist would.

- The defendant had an adequate level of documentation to support each patient's need for the relevant prescriptions.

- SY and MC benefited from the relevant treatment and neither was injured by the treatment.

<u>Carol Warfield</u>.  The defendant asserts that Carol Warfield, M.D., a professor of medicine at Harvard Medical School and a former director of a pain management center, will testify that the defendant's conduct regarding SY and MC was for a legitimate purpose and was within the usual course of professional practice by:

- Providing an overview of pain management and opioid therapy.

- Discussing the consensus or the lack of consensus regarding best practices and medical standards in pain medicine and describing what conduct is consistent with "generally accepted practices" and the "exercise of medical judgment." Def.'s Discl. at 4–5, ECF No. 39.

- Providing insight as to the relevant "terminology used in the medical profession for the purpose of evaluating a medical professional's work." *Id.* at 5.

- Discussing her observation that "SY needed opioids more than any chronic pain patient she has ever seen during her 40 some year career." *Id.*

- Opining that SY and MC benefited from the relevant treatment and that neither was injured by the treatment.

- Providing insight as to her findings in patient MC's and SY's imaging and pathology.

- Discussing the use of opioids generally and the use of opioids in medicine from 2014 through 2016.

- Analyzing the defendant's treatments of SY and MC for other medical conditions.

- Discussing the defendant's clinical judgment and the length of the relationship between the defendant and these patients.

- Asserting that vigilant prescribing practices require firsthand knowledge of and interaction with a patient.

- Discussing the defendant's record keeping as it applies to the usual course of professional practice.

- Discussing a patient's tolerance of opioids, generally.

John Spangler.  The defendant asserts that John Spangler, M.D., M.P.H., who is board certified in family practice medicine and general preventative medicine and public health and is a professor at Wake Forest University School of Medicine, will opine that the defendant's conduct as to all three patients was for a legitimate purpose and was within the usual course of professional family care medicine because:

- SY's pathology and X rays indicate SY suffers from severe pain.

- The defendant's findings conformed with Dr. Swanson's findings regarding patient SY.

- A pain specialist, Dr. Rebkovich, prescribed higher doses of narcotics for SY than the defendant did.

- The defendant's prescriptions for MC were the same as or lesser dosages than all other providers, except one pain specialist.

- SY's other treatment options failed.

- The defendant "acted appropriately by confronting SY about early refills." *Id.* at 9.

- There were "typically good reasons" for when SY needed additional medication. *Id.*

- The defendant's prescriptions for SY were in response to "escalading pain at the suggestion of physicians at UVA." *Id.*

- The defendant appropriately diagnosed and treated patient MS's ADHD, monitored MS's Adderall use, and warned MS of the seriousness of misuse.

- During the relevant time period, formal diagnostic criteria was not used by most primary care practitioners in diagnosing ADHD.

- During the relevant time period, the use of formal monitoring mechanisms such as treatment agreements, pill counts, prescription monitoring programs, and urine screens were not commonly used by family practitioners in prescribing Adderall.

- The defendant's prescribing of Adderall was in conjunction with the defendant's overall health care relationship with MS.

- MC's MRI aligned with the MC's complaints, and MC's need for the relevant prescriptions was supported by the continuing doctor-patient relationship, office visits, and examinations.

- Multiple non-opioid treatments failed for MC.

- MC's psychiatry evaluation did not indicate a substance abuse issue.

- The defendant properly educated MC about appropriate behaviors regarding controlled substances and "strongly admonished him when the patient displayed unacceptable behaviors." *Id.* at 14.

- As MC's primary care physician, the defendant knew MC more thoroughly than a pain specialist would.

- The "level of diagnosis, exam, testing, and office visits" was adequate to support the defendant's continued prescription of opioids to MC and SY. *Id.*

- The defendant's manner of practice was not dangerous to his patients or the community.

<u>Lauren Caldas.</u>  The defendant asserts that Lauren Caldas, Pharm.D., will testify that the defendant's conduct was for a legitimate purpose and was within the usual course of practice because pharmacists must make independent determinations on such matters before dispensing prescriptions. The defendant expects Dr. Caldas to testify specifically as to the "red flags that plague controlled substance cases." Def.'s Suppl. Resp. 14–15, ECF No. 71.  The defendant originally asserted that Dr. Caldas would testify about the defendant's alleged "conservative prescribing patterns." Def.'s Discl. 16, ECF No. 39.  Defendant has since conceded that Dr. Caldas' proposed testimony about the defendant's overall prescribing patterns is irrelevant.

<u>Lee E. Smith.</u>  The defendant asserts that Lee E. Smith, M.D., who is board certified in otolaryngology and facial plastic and reconstructive surgery, will testify that the defendant's conduct was within the usual course of professional practice because the defendant's treatment of patients MS, SY, and MC was for a medical purpose.  Dr. Smith will also testify regarding the defendant's record-keeping practices and will assert that the defendant's treatment of MS with the relevant Adderall prescriptions was appropriate.

William A. Hazel.  The defendant states that William A. Hazel, M.D., who has previously served as the Secretary of Health and Human Resources for the Commonwealth of Virginia and is board certified in orthopedics and sports medicine, will testify that there was a legitimate purpose behind defendant's relevant conduct and that the relevant conduct falls within the usual course of professional practice by discussing:

- The physician-patient relationship between the defendant and SY, MC, and MS.

- SY's, MC's, and MS's "clear medical need" for the relevant prescriptions. *Id.* at 19.

- SY's and MC's "clear pathology for their pain." *Id.*

- How the defendant treated patients SY, MC, and MS for medical conditions other than pain and ADHD, and that the defendant relied on clinical judgment and his relationship with each patient.

- The extent to which a patient may have tolerance to opioids.

- The different standards of care regarding matters at the Virginia Board of Medicine, civil medical negligence cases, and criminal cases.

Phillip Peterson.   The defendant, Phillip Peterson, M.D., states he will use his experience in family medicine, and specifically in treating chronic pain and ADHD, to testify that the relevant treatments of SY, MC, and MS were for legitimate

purposes and were within the normal course of his practice.  He asserts that he will specifically testify as to why patients SY and MC required the relevant prescriptions. He also asserts he will testify about examinations and testing as to all three patients, his treatment objectives, and his collaboration with physicians from the University of Virginia regarding SY's treatment.

## II.

The proponent of expert testimony must establish the admissibility of that testimony by a preponderance of the evidence. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592, n.10 (1993).  A party who seeks to elicit expert opinions from a witness must establish that the witness is qualified to testify to such matters. Fed. R. Evid. 702; *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007).  Specifically, witnesses may be qualified to give expert opinions "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702.

Moreover, a qualified expert's testimony must be both relevant and reliable. Relevant testimony is that which "has any tendency to make the existence of a fact [of consequence] more or less probable than it would be without the evidence." Fed. R. Evid. 401.  In the context of expert testimony, evidence is relevant if it "assist[s] the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *Daubert*, 509 U.S. at 591.

Even if the expert is qualified and the proposed testimony is relevant and reliable, a district court has the discretion to exclude the expert or a portion of his testimony.  A district court may do so if the probative value of the evidence will be substantially outweighed by a risk of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or constitutes a needless presentation of cumulative evidence. Fed. R. Evid. 403. Thus, courts have the discretion to limit testimony because of the proffered evidence's "cumulative nature," *United States v. Talib*, 347 F. App'x 934, 939 (4th Cir. 2009) (unpublished), or because it will be "entirely repetitive." *See United States v. Solina*, 733 F.2d 1208, 1213 (7th Cir. 1984) (recognizing that "[i]t is true that even repetitive evidence might have had some value in bolstering the credibility of the defendants' version of the [facts]" but that "juries are always cautioned not to resolve factual disputes simply by counting the number of witnesses on each side of the dispute").  Nonetheless, similar evidence may not be needlessly cumulative if "each witness offer[s] a distinct insight into the question." *Stone ex rel. Stone v. Stoker*, No. 91-2126, 1992 WL 98356, at *2 (4th Cir. May 13, 1992) (per curium) (unpublished).

### A.  Dr. Swanson, Dr. Warfield, and Dr. Spangler.

Here, there are several instances of repetitive testimony expected from Dr. Swanson, Dr. Warfield, and Dr. Spangler.  For example, all three will testify that based on their specialized knowledge and experience, they believe that SY and MC

needed the relevant prescriptions, and therefore, the defendant's conduct was for a legitimate purpose. All three are also expected to testify as to how the defendant, as a primary care physician, had knowledge of the patients and insight into their specific needs.

Nevertheless, the proposed testimony of these three witnesses is not entirely repetitive. Each doctor will base their overall opinion on unique, specialized knowledge and experience in practice areas of particular relevance to this matter. For example, Dr. Spangler will base his opinions on his education and experience as a family medicine practitioner, which is the area in which the defendant practiced. In contrast, Drs. Swanson and Warfield will base their opinions on their education and experiences as pain management specialists, which is relevant to the defendant's treatment of SY and MC. Thus, the experts will approach their similar opinions from different, relevant angles.

Moreover, the defendant indicates that each witness will testify as to different facets of the overall issue. For example, the defendant expects Dr. Swanson to testify about the defendant's referrals of MC to pain management clinics and other physicians, Dr. Warfield to testify about generally accepted practices in pain medicine and a patient's tolerance to opioids, and Dr. Spangler to testify about the diagnostic criteria and monitoring practices with regard to Adderall and the defendant's treatment of MS. In essence, although some of the proposed testimony

may be redundant, at this point, there is no indication that the testimony as a whole will be needlessly cumulative because it appears that "each witness [plans to] offer a distinct insight into the question," *Stone*, 1992 WL 98356, at *2, as to whether the defendant's alleged conduct was in good faith, for legitimate purposes, and outside the course of a professional family medicine or pain management practice.

### B. Dr. Caldas and Dr. Smith

In contrast, the value of Dr. Caldas' and Dr. Smith's expected testimony is substantially outweighed by the considerations listed in Rule 403 of the Federal Rules of Evidence.

Courts have found that pharmacists may testify as to the scope and legitimacy of a defendant-physician's alleged conduct. *United States v. Tran*, 609 F. App'x 295, 299 (6th Cir. 2015) (unpublished) ("[The pharmacist's] training qualified him both to remark on the apparent invalidity of [the physician's] prescriptions and to explain the basis for his assessment—i.e., that the type and volume of [the physician's] prescriptions appeared to fall outside the scope of a podiatrist's practice."). However, any probative value of Dr. Caldas' testimony is substantially outweighed by the risk that such testimony will be needlessly cumulative.  It appears that Dr. Caldas' testimony will simply mirror other testimony—Dr. Caldas is expected to testify as to the "red flags that plague controlled substances," Def.'s Suppl. Resp. 15, ECF No. 71, and will assert that the defendant's conduct with regard to all three

patients was for a legitimate purpose and in the usual course of medical practice. Although the defendant expects Dr. Caldas to testify about a pharmacist's independent duty to determine whether a prescription is for a legitimate purpose and within the bounds of a medical practice, there is no indication this testimony will provide any unique insight into the specific conduct at issue or will do anything other than merely repeat Dr Swanson's, Dr. Warfield's, and Dr. Spangler's overarching opinions.

Any value of Dr. Smith's testimony is also substantially outweighed by the risk that it will constitute a needless presentation of cumulative evidence. Notably, Dr. Smith's expertise is in otolaryngology and plastic and reconstructive surgery, not family medicine, pain management, or mental health disorders such as ADHD. Even if Dr. Smith's testimony has some limited value as testimony from an experienced physician in general, every facet of Dr. Smith's proposed testimony is expected to be discussed by other witnesses. Specifically, the record indicates that Drs. Swanson, Warfield, and Spangler all plan to opine that the defendant's treatment of SY and MC was legitimate and within the usual course of professional practice, Dr. Swanson and Dr. Warfield are expected to testify about the defendant's record-keeping practices, and Dr. Spangler is expected to testify about the defendant's treatment of MS. Thus, Dr. Smith's expected testimony is entirely redundant, and this proposed cumulative presentation significantly outweighs any

value that the jury may glean from a witness who has no apparent specialized experience in pain management or general family medicine.

Because I find that any value of Dr. Caldas' and Dr. Smith's testimony will be substantially outweighed by the fact that such testimony will constitute cumulative proof, I will exclude such testimony.

### C. Dr. Hazel.

Like Dr. Smith's proposed testimony, it appears that most of Dr. Hazel's expected testimony will merely repeat Dr. Swanson's, Dr. Warfield's, and Dr. Spangler's testimony about the conduct at issue. Specifically, Dr. Hazel's expected testimony about the defendant's physician-patient relationships with the three patients, the three patients' alleged need for the relevant treatments, and opioid tolerance is all duplicative of testimony expected to be provided by the witnesses who have pain management and/or family medicine experience. However, the defendant also expects that Dr. Hazel may also testify about the Virginia Board of Medicine regulations. Any value of Dr. Hazel's expected testimony regarding the different standards of care in matters at the Board of Medicine, civil negligence cases, and criminal cases may be outweighed by the Rule 403 considerations. Jury instructions and the court's charge to the jury at the close trial can adequately articulate the controlling standard, see *United States v. McIver*, 470 F.3d 550, 558 (4th Cir. 2006), and specific witness testimony as to the difference between the

standards may create a risk of misleading or confusing the jury as to which standard matters here.

However, because the Virginia Board of Medicine does have regulations governing opioid prescriptions, Dr. Hazel's testimony may become probative if the government opens the door by introducing evidence regarding the regulations in the context of determining the scope of professional practice.  Thus, I will not exclude Dr. Hazel from testifying at this time.

### D. The Defendant.

Finally, the defendant is qualified to render opinion testimony based on his education, training, and expertise in family practice medicine. Fed. R. Evid. 702. The Federal Rules of Evidence treat expert witness qualifications liberally. *See Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993).  Moreover, the court can minimize any risk that such duel-role testimony "will mislead and create significant confusion for the jury," Mem. Supp. Mot. Lim. 12, ECF No. 42, by enacting measures to prevent the jury from improperly placing heightened credibility on any testimony about disputed factual matters.  For example, neither the court nor the parties should formally refer to the defendant, or any other proposed expert, as an "expert." The advisory committee notes to Rule 702 of the Federal Rules of Evidence state:

> The amendment continues the practice of the original Rule in referring to a qualified witness as an "expert." This was done to provide continuity and to minimize change. The use of the term "expert" in the

> Rule does not, however, mean that a jury should actually be informed that a qualified witness is testifying as an "expert." Indeed, there is much to be said for a practice that prohibits the use of the term "expert" by both the parties and the court at trial. Such a practice ensures that trial courts do not inadvertently put their stamp of authority on a witness's opinion, and protects against the jury's being overwhelmed by the so-called "experts."

Fed. R. Evid. 702 advisory committee's notes to 2000 amendment (citations and internal quotation marks omitted).

Additionally, defense counsel should call the defendant to the stand twice, once as a lay witness to testify as to any disputed facts and separately to provide any opinion testimony. *See United States v. Smith*, 919 F.3d at 825, 838 (4th Cir. 2019) (referring to a witness testifying in both a percipient and expert capacity and stating that "[b]y limiting the breadth of the expert testimony and separating in time his fact and expert testimony, the Government cabined any potential confusion or unfair prejudice").  Defense counsel must also "be clear in their questions" as to whether they are asking the defendant to give lay testimony versus opinions based his specialized knowledge of family medicine. *United States v. Garcia*, 752 F.3d 382, 392 (4th Cir. 2014).  I may also instruct the jury on the importance of differentiating between opinions based on specialized knowledge and testimony given solely as a lay witness if duel-role testimony is presented. *See Smith*, 919 F.3d at 838–39.

Finally, the probative value of defendant's expected opinion testimony is not *substantially* outweighed by the risk that the testimony will *needlessly* cumulative.

Because this matter involves the defendant's conduct, the defendant's testimony, even if somewhat duplicative of other testimony, will likely provide the jury some unique insight into the legitimacy and purpose of his actions in the context of his specialized knowledge and experience as a family physician and his practice as a whole.

III.

Accordingly, it is **ORDERED** that the government's Motion in Limine, ECF No. 41, is GRANTED IN PART AND DENIED IN PART.  Witnesses Dr. Marc A. Swanson, Dr. Carol Warfield, Dr. John Spangler, Dr. William A. Hazel, and the defendant, Dr. Phillip Peterson, will be permitted to testify.  Dr. Lauren Caldas and Dr. Lee E. Smith will not be permitted to testify.

ENTER:  August 26, 2020

/s/  JAMES P. JONES
United States District Judge